## Appeal of Phoebe Apartments, Inc., et al.

*Edward N. Cahn* and *Gene D. Smith*, for appellants.
*David G. Welty*, for Lehigh County, appellee.

KOCH, P. J., July 10, 1973.—We have consolidated these appeals from decisions of the Board of Assessment Appeals of the County of Lehigh for the reason that the factual matters and questions of law are identical.

In the Phoebe Apartments, Inc. (hereinafter referred to as "Phoebe") appeal, after hearing before the Board of Assessment Appeals, an assessment of $344,080 was established on December 18, 1972. The sole issue before the board and this court is whether Phoebe, a nonprofit corporation[1] is exempt from real estate taxation as an institution of purely public charity pursuant to articles VIII, sec. 2(a), of the Pennsylvania Constitution and the General County Assessment Law, Act of May 22, 1933, P. L. 853, article II, sec. 204, as amended, 72 PS §5020-204, which exempts, inter alia, from local taxation: "(c) All hospitals, universi-

---

[1] See Articles of Incorporation, 325 September term, 1966.

ties, colleges, or . . . seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose; . . . (i) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it."

Phoebe, founded by the Penn Northeast Conference of the United Church of Christ, is the owner of apartment premises known as 1901-1951 Linden Street, Allentown, designated on the County Tax Map as H9NWIC3-3. The apartment is occupied as a project for the elderly under a program of the Department of Housing and Urban Development (hereinafter referred to as "HUD") known as a 202 Project whereby construction was financed by a 100 percent Federal mortgage. A detailed loan agreement provides that the loan for the rental housing project is intended to provide approximately 132 senior citizen units. A regulation agreement between Phoebe and the secretary of HUD provides, section 3(a), Phoebe Exhibit 2, that borrower will limit public occupancy to elderly or handicapped families and persons as defined in the Housing Act of 1959. We further find that applications are considered without regard to sex, race, creed, national origin or religious persuasion. In order to qualify, a person must be at least 62 years of age unless

there is certification of a Social Security disability. Moreover, there is an established annual income limitation, $5,400 in the case of single persons, and $6,075 for married couples. We further find that rentals are established as follows: $100 per month for an efficiency unit and $130 for a one bedroom unit. All utilities are included in the monthly rental. The testimony demonstrates that these rentals are substantially lower than comparable living units in privately financed apartments. Finally, it was established before the board that the directors serve without compensation.

Episcopal Housing of the Lehigh Valley, Inc., (hereinafter referred to as "Episcopal"), is the owner of an apartment located at 1428-1452 Walnut Street, Allentown, and designated on the tax map as H9NW2C. Its appeal is from an assessment of $510,000 established also on December 18, 1972. Here, too, the question to be determined is whether this nonprofit corporation,[2] founded by the Episcopal Diocese of Bethlehem, qualifies as an institution of purely public charity pursuant to the constitutional and statutory principles referred to herein.

This facility, occupancy of which is limited to senior citizens, is also financed as a 202 Project of HUD under a 100 percent Federal mortgage. As in Phoebe, there are established annual income levels for tenants, $5,400 for a single person and $6,075 for couples. Episcopal is subject to the same nondiscrimination rules as Phoebe and occupancy may be allowed only for persons 62 years of age and upwards, except in the case of disability as defined for Social Security purpose. Rentals are established at $85 and $87 per month for efficiency units and $113 and $117 for one bedroom units. These amounts, we find from the testi-

---

[2] See Articles of Incorporation, 142 September term, 1964.

mony, are dramatically lower than comparable rents in apartments operated on a commercial basis. We find also that membership on Episcopal's board of directors carries no compensation.

We observe, finally, that the Articles of Incorporation of each of the appellants provides that the enterprises shall not be conducted or operated for profit and no part of the net earnings shall enure to the benefit of, or be distributed to, any trustee, officer, contributor or private individual.

The question as to whether the real property of an institution is one of purely public charity within the meaning of the Constitution and statutes is a mixed question of fact and law: Hill School Tax Exemption Case, 370 Pa. 21; Presbyterian Homes Tax Exemption Cases, 428 Pa. 145; Robert Morris College v. Board of Property Assessment Appeals and Review, 5 Comm. Ct. 648. It has also been established that in order for such institutions to obtain exemption from taxation, it must affirmatively show that the entire institution, (1) is one of "purely public charity"; (2) was founded by public or private charity; (3) is maintained by public or private charity: Woods Schools Tax Exemption Case, 406 Pa. 579; 36 P. L. Encyc. 41, §98, et seq.

As pointed out in Robert Morris College v. Board of Property Assessment Appeal and Review, supra, the determination of what is and what is not a "purely public charity" has been troublesome. Fortunately, however, some of the aspects of the two cases before us which might ordinarily lead us to a denial of tax exemption were discussed in Four Freedoms House of Phila. v. Philadelphia, 443 Pa. 215, which also involved low cost housing for elderly persons with limited incomes. In that decision, a divided court granted exemption. At page 219, the court said:

"Although appellant has never realized a profit and

despite the fact that the rents charged by appellant are less than those charged by commercial apartments for the elderly, it was the position of the court below that appellant was not maintained by charity but rather by each tenant paying his own way.

"A similar contention was advanced and rejected in Presbyterian Homes. 'Appellants further contend that since many residents pay their way completely and 80 per cent of the operational costs are paid by the residents, the Home is a profit-making institution. We do not agree . . . Furthermore, the Home has never in any year realized a profit and, even more important, no profit, if there were any, would go to an individual or to a corporation operated for private profit.' . . . 428 Pa. at 153-54, 236 A. 2d at 780. On these facts, the rent charged by appellant is less than the amounts charged by similarly situated, commercial lessors as it merely covers appellant's operational expenses and does not include any margin of profit. Although some jurisdictions refuse to exempt homes for the aged where there are rental payments, see, Annot., 37 A. L. R. 3d 565 (1971), we do not believe each tenant's fractional payment of the operational expenses should eliminate appellant's tax-exempt status. See, Vanguard School Tax Exemption Case, 430 Pa. 378, 243 A. 2d 323 (1968); Hill School Tax Exemption Case, 370 Pa. 21, 87 A. 2d 259 (1952). Indeed, if the charitable exemption is lost, appellant will be required to close its doors or increase the rent; either alternative frustrates the charitable intention to provide low-cost housing for the elderly."

We conclude that the appeals before us are determined by the Four Freedoms case. Both appellants have demonstrated that factually their institutions are identical to the facility discussed in that decision and are, accordingly, entitled to real estate tax exemption.

## ORDER

Now, July 10, 1973, the appeals of Phoebe Apartments, Inc., and Episcopal Housing of the Lehigh Valley, Inc., from real estate tax assessments levied by the Board of Assessment Appeals by the County of Lehigh are sustained, and it is ordered that the real estate of the respective nonprofit corporations referred to in the foregoing opinion be entered upon the tax rolls as exempt from taxation.